**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **POWER QUALITY & ELECTRICAL SYSTEMS, INC.; RAJINDER K. SINGH; AND TEJINDAR P. SINGH,**<br><br>                    **Plaintiffs,**<br><br>          **vs.**<br><br>**BP WEST COAST PRODUCTS LLC,**<br><br>                    **Defendant.** | **Case No.: 16-CV-04791 YGR**<br><br>**ORDER GRANTING MOTION TO DISMISS AND VACATING HEARING** |

Plaintiffs Power Quality & Electrical Systems, Inc., Rajinder K. Singh, and Tejindar P. Singh bring this breach of contract action relating to the purchase of two franchises to operate gasoline stations from defendant BP West Coast Products LLC ("BP"). Plaintiffs allege five claims: (I) Breach of Contract; (II) Breach of Covenant of Good Faith and Fair Dealing; (III) Violation of California Business and Professions Code section 17200; (IV) Violation of California Business and Professions Code section 17500; and (V) Breach of Fiduciary Duty.

BP has filed a motion to dismiss on the grounds that plaintiffs' claims I through V related to the operations of the stations at issue are barred by the statute of limitations, and that Claims III and V fail to state a claim for relief under Rule 12(b)(6). (Dkt. No. 19.) Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS** defendant's motion to dismiss as follows: Claims I through IV are **DISMISSED WITH LEAVE TO AMEND.** Claim V is **DISMISSED WITHOUT LEAVE TO AMEND.**[1]

---

[1] The Court has determined that the motion is appropriate for decision without oral argument, as permitted by Civil Local Rule 7-1(b) and Federal Rule of Civil Procedure 78. *See also Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991). Accordingly, the Court **VACATES** the hearing set for November 15, 2016.

United States District Court
Northern District of California

I.   **BACKGROUND AND SUMMARY OF RELEVANT FACTUAL ALLEGATIONS**

Plaintiffs filed their original complaint in Alameda Superior Court on July 22, 2016.  (Dkt. No. 1, at 11.)  Defendant removed the action to federal court on the basis of diversity jurisdiction. (Dkt. No. 1.)  Plaintiffs filed their corrected First Amended Complaint on September 19, 2016. (Dkt. No. 18 ("FAC").)

Plaintiffs' FAC relates to franchise agreements with BP to operate two gasoline stations. The FAC alleges as follows:

### A.  Plaintiffs Contract with BP to Purchase Two Franchises

Since 1998, plaintiffs have operated two gas stations, one in San Ramon, CA and one in Dublin, CA.  (FAC ¶ 14.)  In or about June 2007, a BP sales representative approached plaintiffs offering to brand the stations as ARCO gas stations.  Plaintiffs and BP then entered into various agreements (the "Franchise Agreements") to operate the San Ramon and Dublin stations as ARCO-branded fueling stations and ampm mini markets.  The agreements provided BP with sole discretion for selecting vendors and the manner in which fuel was delivered and paid.  (*Id.* ¶ 15.)  Prior to executing the contracts to convert both sites to ampm mini markets, BP representative Shaheenur Rahman brought plaintiffs to three other BP and ARCO facilities with ampm mini markets that were "similar" to the San Ramon and Dublin stations, stated that they were "extremely profitable with over $100,000 in monthly store sales even though two of the three stations only had two fuel dispensers," and provided plaintiffs with a $40,000 per month projection of profits for the San Ramon station.  (*Id.* ¶ 16.)

In or around September 2007, plaintiffs and BP entered into loan agreements of $500,000 for each site to finance the ampm minimarket conversions.  BP placed a lien on the San Ramon and Dublin properties, which plaintiffs owned.  (*Id.* ¶ 17.)  Plaintiffs also obtained a private loan of approximately $1 million to cover the remaining costs.  The Dublin and San Ramon station conversions into ampm minimarkets completed in around December 31, 2009, and January 2011, respectively.  (*Id.* ¶¶ 17, 22.)

United States District Court
Northern District of California

### B.  The San Ramon Station Suffers Losses and Closes in April 2012

The San Ramon station began to suffer significant losses.  During the conversion process, BP representatives for that region, including Rahman, Patrick Lemons, and Eric Sell "promised that everything would improve once the ampm minimarket conversion was complete."  (*Id.* ¶ 20.) In late 2011 and early 2012, plaintiffs had several meetings with BP's Tom Reeder, who assured them that they were "operating the station correctly within the guidelines provided by BP and . . . that the station would become profitable as promised."  (*Id.* ¶ 23.)  The losses continued.

Plaintiffs allege that BP breached the Franchise Agreements as follows: BP refused to allow plaintiffs a "temporary voluntary allowance" under their contracts relating to fuel sales and ampm mini mart, thereby preventing plaintiffs from effectively competing with neighboring gas stations; BP preemptively announced that it would not under any circumstances consent to approve additional and alternative vendors for the ampm mini-mart, preventing plaintiffs from competing in the local market; and BP unreasonably withheld its consent to plaintiffs' repeated requests to reduce cooked food supplies during certain hours of operation, leading to waste of excess food.  (*Id.* ¶¶ 26, 27.)  BP refused to modify the terms of the contracts.  (*Id.* ¶ 28.)

In April 2012, plaintiffs met with Mr. Lemon and Mr. Sell and informed them that they could not continue operating the station.  On April 22, 2012, plaintiffs closed the San Ramon station.  (*Id.* ¶¶ 25, 30.)  On May 17, 2012, BP issued plaintiffs a notice of breach of contract and termination letter for closing the San Ramon station, seeking immediate return of equipment and payment of liquidated damages and repayment of loans and financing totaling over $700,000.  (*Id.* ¶ 31.)

In late May 2012, plaintiffs met with Mr. Sell to discuss the amicable closure of the San Ramon station.  He provided plaintiffs with the contact information of an individual who was building his own station, and plaintiffs then arranged to sell him their equipment.  "Plaintiffs and BP agreed and understood that upon the sale of the BP equipment . . . the relationship between plaintiffs and BP, with respect to the San Ramon station, was terminated and that neither were indebted to each other."  (*Id.* ¶ 32.)  Plaintiffs believed that this agreement "superseded the alleged claims outlined in the San Ramon Termination Letter . . . ."  (*Id.*)

1

**C.  The Dublin Station Starts Off Profitable, Then Closes In Early July 2012**

2

On the other hand, the Dublin station was "moderately profitable" when it opened in 2009.

3

(*Id.* ¶ 24.)  In late 2011, Mr. Lemons visited the Dublin station and complained that the Dublin

4

station gas prices were too high, which adversely affected his bonus tied to store sales, and advised

5

plaintiffs to lower fuel prices.  This was despite plaintiffs' experience that the station was always

6

more profitable with higher gas prices even with relatively "lower" store sales.  (*Id.* ¶ 24.)

7

In around June 2012, after plaintiffs closed the San Ramon station, BP changed the fuel

8

payment terms from four days after delivery to collect on delivery ("COD"), effective immediately.

9

(*Id.* ¶ 34.)  BP controlled the price and timing of all fuel load deliveries under the Franchise

10

Agreements.  After BP implemented the change, plaintiffs did not have sufficient funds or notice to

11

pay for the next two fuel loads.  BP then initiated an additional fee of approximately $2,000 for

12

each fuel load moving forward.  (*Id.* ¶ 35.)   Plaintiffs allege that BP was retaliating against them

13

for closing the San Ramon station.

14

In "early July 2012," plaintiffs closed the Dublin station.  (*Id.* ¶ 37.)  Upon meeting with

15

Mr. Sell, he "confirmed that the relationship had terminated and never mentioned payment of

16

liquidated damages, repayment of loans, or returning any signage or equipment to BP at any point

17

during or after this meeting.  As with the San Ramon station, plaintiffs and Mr. Sell understood that

18

the relationship between plaintiff and BP had ended and that the parties were not indebted to each

19

other in any way."  (*Id.*)

20

On July 23, 2012, BP issued a letter to plaintiffs stating that plaintiffs had breached the

21

agreements at the Dublin Station and demanded over $1 million in liquidated damages, repayment

22

of loans and financing, and past deliveries of fuel.  (*Id.* ¶ 34.)  In early August 2012, plaintiffs

23

contacted Mr. Lemons to confirm the closure of the San Ramon and Dublin stations and to notify

24

him that the July 23, 2012 termination letter was inconsistent with the agreements reached with Mr.

25

Sell regarding the termination of their relationship with BP.  Mr. Lemons said he would check with

26

management on the question of whether plaintiffs could disregard the letter, but did not contact

27

plaintiffs again or return their several follow-up calls.  (*Id.* ¶ 39.)

28

United States District Court
Northern District of California

## D.  Plaintiffs Discover BP's Remaining Liens in 2015

In or around 2015, approximately three years after branding the two gas stations to sell Chevron gasoline, plaintiffs met with their banking representative on an unrelated matter and learned that BP had not removed its lien on the Dublin station.  They later learned that BP had not removed its lien on the San Ramon station either.  (*Id.* ¶ 41.)  On or about July 22, 2016, BP secretly contacted Chevron to inform them that they were seeking to proceed with non-judicial foreclosure on the San Ramon and Dublin stations.  (*Id.* ¶ 42.)

Plaintiffs filed the instant suit on July 22, 2016, notably without a claim for quiet title.

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted.  Dismissal for failure to state a claim under Rule 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).  The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  If the facts alleged do not support a reasonable inference of liability, stronger than a mere possibility, the claim must be dismissed. *Id.* at 678–79; *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (stating that a court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences") (citation omitted).

"Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 554–55 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original) (citation omitted).  Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

1    action will not do." *Id.* at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (internal

2    brackets and quotation marks omitted)).  The Court will not assume facts not alleged, nor will it

3    draw unwarranted inferences.  *Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a

4    plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its

5    judicial experience and common sense.").

6         If dismissal is appropriate, a court "should grant leave to amend even if no request to amend

7    the pleading was made, unless it determines that the pleading could not possibly be cured by the

8    allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quotation marks

9    and citation omitted).

10   **III.   DISCUSSION**

11        **A.  Statute of Limitations**

12        Defendant argues that Claims I, II, IV, and portions of III and V relating to the operation of

13   the gasoline stations fail to state a claim for relief because they are barred by the applicable statutes

14   of limitations.  The Court addresses each claim as follows.

15        *1.   Claim I: Breach of Contract*

16        Defendant argues that plaintiffs untimely filed their claim for breach of contract.  Under

17   California law, the statute of limitations for breach of a written contract is four years.[2]  Cal. Civ.

18   Proc. Code § 337(1).  A threshold question is when the statutes of limitations period starts to run.

19   Under California law, "the limitations period, the period in which a plaintiff must bring suit or be

20   barred, runs from the moment a claim accrues."  *Aryeh v. Canon Bus. Solutions, Inc.,* 55 Cal.4th

21   1185, 1191 (2013).  The "last element" accrual rule provides that absent any equitable exception, a

22   claim accrues upon "'the occurrence of the last element essential to the cause of action.'"  *Id.*

23   (quoting *Neel v. Magana, Olney, Levy, Cathcart & Gelfand,* 6 Cal.3d 176, 187 (1971)).  A breach

24   of contract claim generally accrues at the time of the breach.  *Jen v. City & Cty. of San Francisco,*

25

26        [2]  Defendants argue that plaintiffs' claims sounding in fraud have three-year limitations
     periods.  An "action for relief on the ground of fraud" has a three-year statute of limitations period.
27   Cal. Civ. Pro. Code § 338(d); *Brooks v. Washington Mut. Bank*, No. C 12-00765 WHA, 2012 WL
     5869617, at *3 (N.D. Cal. Nov. 19, 2012).  Given the Court's finding that the claims are barred by
28   the four-year statute of limitations, it does not reach this issue.

United States District Court
Northern District of California

1   No. 15-CV-03834-HSG, 2016 WL 3669985, at *5 (N.D. Cal. July 11, 2016) (citation omitted);

2   *Mortkowitz v. Texaco, Inc.,* 842 F. Supp. 1232, 1236 (N.D. Cal. 1994) (citing *Donahue v. United*

3   *Artists Corp.*, 2 Cal. App. 3d 794, 802 (1969)).  Under the discovery rule, "[s]ubjective suspicion is

4   not required.  If a person becomes aware of facts which would make a reasonably prudent person

5   suspicious, he or she has a duty to investigate further and is charged with knowledge of matters

6   which would have been revealed by such an investigation."  *Mangini v. Aerojet–Gen. Corp.,* 230

7   Cal. App. 3d 1125, 1150 (1991) (citation omitted).

8          Here, plaintiffs allege that BP breached the terms of the parties' Franchise Agreements.

9   (FAC ¶¶ 15, 43-49.)  Regarding the San Ramon station, the FAC alleges that on April 22, 2012,

10  plaintiffs closed that station because "BP refused to abide by the contract terms and/or work with

11  plaintiffs in any meaningful way to improve the profitability of the San Ramon station."  (*Id.* ¶ 29.)

12  The alleged breaches of contract leading to plaintiffs' loss of profits and the closure of the San

13  Ramon station included: (1) BP's breach of paragraph 5 of the "Contract Dealer Gasoline

14  Agreement" by refusing to grant plaintiffs with temporary voluntary allowances ("TVA") to allow

15  them to compete more effectively with neighboring gas stations despite plaintiffs' repeated requests

16  (*id.* ¶ 46.); (2) BP's breach of article 12.04 of the ampm Mini Market Agreement by informing

17  plaintiffs that any request for additional or alternative vendors would be denied (*id.* ¶ 47); and (3)

18  BP's breach of article 13.03 of the ampm Mini Market Agreement causing plaintiffs to maintain an

19  excess supply of food and beverages resulting in losses in excess of $3,000 per month at the San

20  Ramon station (*id.* ¶ 48).  The FAC states that each of these breaches occurred before plaintiffs

21  closed the San Ramon station on April 22, 2012.  Therefore, the four-year statute of limitations

22  began to run by that date.  The defendant's alleged wrongdoing resulting in the closure of the

23  station triggered a duty to investigate further, and plaintiffs are "charged with knowledge of matters

24  which would have been revealed by such an investigation."  *Mangini,* 230 Cal. App. 3d at 1150.

25  Accordingly, plaintiffs' breach of contract claim regarding the San Ramon station filed over four

26  years later on July 22, 2016 is untimely.

27         Regarding the Dublin station, plaintiffs similarly allege that BP's various breaches of the

28  Franchise Agreements caused plaintiffs to suffer monetary damages.  (*Id.* ¶ 49.)  The FAC alleges

that in around June 2012, in retaliation for plaintiffs' closure of the San Ramon station, BP implemented an additional $2,000 fee for each fuel load purchase and placed plaintiffs' shipments on COD terms.  (*Id.* ¶¶ 35-36.)  Plaintiffs closed the Dublin station in early July 2012,[3] by which point the statute of limitations commenced.  Accordingly, for the same reasons as the San Ramon station, plaintiffs' breach of contract claim related to the Dublin station is time barred.

### 2.   *Claim II: Breach of Covenant of Good Faith and Fair Dealing*

Defendant also argues that plaintiffs' claim for breach of implied covenant of good faith and fair dealing is time barred.  In California, the statute of limitations for the breach of the covenant of good faith and fair dealing based on contract is four years.  *See Fehl v. Manhattan Ins. Grp.*, No. 11-CV-02688-LHK, 2012 WL 10047, at *4 (N.D. Cal. Jan. 2, 2012) (citing *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1144 (1990)).  Therefore, for the same reason as the breach of contract claim, Claim II is untimely.

### 3.   *Claims III, IV and V: California Business and Professions Code Violations, Breach of Fiduciary Duty*

Defendant further contends that the statute of limitations for Claims III, IV, and V related to the operations of the stations bar these claims.  The statute of limitations for claims under Business and Professions Code sections 17200 and 17500 is four years.  Cal. Bus & Prof. Code § 17208.  The limitations period is also four years for breach of fiduciary duty.  *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1137 (9th Cir. 1998).  Accordingly, for the same reasons as the breach of contract claim, Claims III, IV, and V are also time barred.

### 4.   *Discovery Rule*

Plaintiffs argue that their breach of contract and related claims are not barred because the statutes of limitations did not begin to run until mid-2015, when plaintiffs first discovered that they had been damaged because BP had not removed the liens on their properties.  California applies the discovery rule to breach of contract claims.  *El Pollo Loco, Inc. v. Hashim,* 316 F.3d 1032, 1039

---

[3]  Plaintiffs' FAC does not provide the date on which they closed the Dublin station. Defendants cite evidence (Dkt. No. 1 at 44) that the date of the closure was July 5, 2012.  The Court does not rely on this fact.  Rather, it interprets the FAC's reference to "early July 2012" as the date of the closure to mean prior to July 23, 2012.

United States District Court
Northern District of California

1   (9th Cir. 2003). The discovery rule also applies to claims brought under Business and Professions

2   Code sections 17200 and 17200, as well as to breach of fiduciary duty claims. *See Cover v.*

3   *Windsor Surry Co.*, No. 14-CV-05262-WHO, 2015 WL 4396215, at *3 (N.D. Cal. July 17, 2015)

4   (citing *Aryeh,* 55 Cal.4th at 1191); *Apr. Enterprises, Inc. v. KTTV*, 147 Cal. App. 3d 805, 827

5   (1983). "The discovery rule may be applied to breaches which can be, and are, committed in secret

6   and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by

7   plaintiffs until a future time." *See Hashim*, 316 F.3d at 1039 (citations omitted). "Ultimately, the

8   discovery rule permits delayed accrual until a plaintiff knew or should have known of the wrongful

9   conduct at issue." *Id.* (internal citations and quotation marks omitted). In invoking the discovery

10   rule, a plaintiff must plead and prove facts showing: (a) lack of knowledge; (b) lack of means of

11   obtaining knowledge (in the exercise of reasonable diligence the facts could not have been

12   discovered at an earlier date); (c) how and when he actually discovered the fraud or mistake. *Gen.*

13   *Bedding Corp. v. Echevarria,* 947 F.2d 1395, 1397 (9th Cir. 1991).

14         Plaintiffs argue that their 2015 discovery of the liens triggered the statute of limitations.

15   The FAC alleges that as of late May 2012, based on representations by Mr. Sell, "Plaintiffs and BP

16   agreed and understood that . . . the relationship between plaintiffs and BP, with respect to the San

17   Ramon station, was terminated and that neither were indebted to each other." (FAC ¶ 32.)

18   Similarly with regard to the Dublin station, "Plaintiffs and Mr. Sell understood that the relationship

19   between plaintiff and BP had ended and that the parties were not indebted to each other in any

20   way." (*Id.* ¶ 37.) Therefore, plaintiffs argue that they reasonably believed that defendant was

21   abiding by this alleged walk-away agreement and did not become aware that BP had maintained its

22   liens on the San Ramon and Dublin properties until mid-2015, after speaking to their banking

23   representative on an unrelated matter.

24         Plaintiffs' allegations do not satisfy the discovery rule. The FAC alleges their lack of

25   knowledge of the wrongful conduct until their discovery of the liens in 2015, but does not allege

26   lack of means of obtaining the knowledge through reasonable diligence. *Gen. Bedding Corp.,* 947

27   F.2d at 1397. Plaintiffs argue in their Opposition that they had "no reason to believe the liens were

28   not earlier removed" and "plaintiffs were ignorant through no fault of their own." (Opp. at 18.)

However, the FAC itself does not reflect such facts.  In the FAC, Plaintiffs allege that they "had previously *assumed* these liens were withdrawn upon the closure of the stations and completion of the debranding process."  (FAC ¶ 4, emphasis added.)  In addition, the FAC alleges that they received notices of breach of contract and termination letters from BP regarding the San Ramon station on May 17, 2012 and the Dublin station on July 23, 2012.  (*Id.* ¶¶ 31, 38.)  Upon contacting Mr. Lemons to question the inconsistencies between Mr. Sell's alleged representations and the July 2012 letter, Mr. Lemons said he "would check with management on the question of whether plaintiffs could disregard the letter."  (*Id.* ¶ 39.)  However, despite making several follow-up calls to Mr. Lemons and Mr. Rahman, they allege that they did not receive a response or any further contact from BP.  (*Id.*)  In order to satisfy the discovery rule, plaintiffs must adequately allege that in the exercise of reasonable diligence they *could not have discovered* the facts at an earlier date.  *See Gen. Bedding Corp.,* 947 F.2d at 1397.  The alleged "several follow-up calls" in 2012 and BP's failure to return them does not demonstrate either plaintiffs' reasonable diligence or their inability to have discovered earlier the alleged wrongdoing.

Finally, plaintiffs' allegations concerning the nature of defendant's efforts to conceal their wrongdoing lack the requisite degree of specificity to allow the Court to conclude reasonably that plaintiffs were actually unable to discover this information until 2015.  The gravamen of plaintiffs' claim is that defendant "intentionally kept plaintiffs ignorant of its true intentions and made representations to prevent plaintiffs from pursuing its [sic] meritorious claims so that BP could foreclose on plaintiffs' properties without accountability for BP's past wrongful conduct."  (FAC ¶ 42.)  Accordingly, plaintiffs are obligated to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Their allegations must include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citations omitted).  To the extent plaintiff allege fraudulent concealment, they fail to meet the level of specificity that Rule 9(b) requires.  The discovery rule does not save their claims as currently pled.

United States District Court
Northern District of California

United States District Court
Northern District of California

### 5. *Equitable Estoppel*

Plaintiffs argue in the alternative that their claims should survive under the doctrine of equitable estoppel.  Even if a claim is time barred, "[a] defendant will be estopped to assert the statute of limitations if the defendant's conduct, relied on by the plaintiff, has induced the plaintiff to postpone filing the action until after the statute has run."  *Mills v. Forestex Co.,* 108 Cal. App. 4th 625, 652 (2003); *McMackin v. Ehrheart,* 194 Cal. App. 4th 128, 140 (2011).  However, such promises do not trigger equitable estoppel unless they are "conditioned upon [ ] refraining from initiating litigation or taking any action against [defendant] and that [the plaintiff does] in reliance thereon forbear from such action."  *Abramson v. Brownstein,* 897 F.2d 389, 393 (9th Cir. 1990) (quoting *Kurokawa v. Blum,* 199 Cal. App. 3d 976, 990 (1988)).  "For a defendant to be equitably estopped from asserting a statute of limitations, the plaintiff must be 'directly prevented . . . from filing [a] suit on time.'"  *Vaca v. Wachovia Mortg. Corp.,* 198 Cal. App. 4th 737, 746 (2011) (alterations in original, citation omitted).  To determine whether equitable estoppel applies, courts consider several factors, such as whether the plaintiff actually relied on the defendant's representations, whether such reliance was reasonable, whether there is evidence that the defendant's purpose was improper, whether the defendant had actual or constructive knowledge that its conduct was deceptive, and whether the purposes of the statute of limitations have been satisfied.  *Naton v. Bank of California,* 649 F.2d 691, 696 (9th Cir. 1981).

Here, plaintiffs contend that Mr. Sell made representations to them that reasonably led them to believe that the parties' relationship had ended and they would not pursue any claims against each other under the Franchise Agreements.  (FAC ¶¶ 32, 37.)  However, even accepting the allegations as true, plaintiffs do not plead any reliance on Sell's alleged promises.  *See Mills,* 108 Cal. App. 4th at 652.  Plaintiffs do not allege that they intended to bring suit in 2012, or any time before early July 2016, when the statute of limitations for claims based on both stations' operations had run.  They have therefore failed to plead sufficient facts to support a claim of equitable estoppel.  *Cf. Battuello v. Battuello,* 64 Cal. App. 4th 842, 848 (1998) (allegations that defendant "convinced [plaintiff] not to file a timely suit by telling [plaintiff] that [plaintiff] would receive the vineyard" during settlement negotiations sufficient to plead equitable estoppel).  Plaintiffs allege on

1  information and belief that defendant improperly "kept plaintiffs ignorant of its true intentions" to

2  "foreclose on plaintiffs' properties without accountability for BP's past wrongful conduct."  (FAC

3  ¶ 42.)  BP allegedly informed Chevron on July 22, 2016, after plaintiffs filed their lawsuit, of its

4  intent to proceed with foreclosure.  (*Id.*)  However, these allegations alone are not sufficient to

5  qualify for equitable estoppel where plaintiffs have not alleged that they reasonably relied on

6  defendant's actions in refraining from filing suit.  *See Abramson,* 897 F.2d at 393.

7           Although plaintiffs' breach of contract and related claims are time barred, plaintiffs may be

8  able to plead that defendant should be equitably estopped from asserting a statute of limitations

9  defense.  Accordingly, Claims I through IV are **DISMISSED WITH LEAVE TO AMEND**, as

10 amendment would not necessarily be futile.  *See Lopez*, 203 F.3d at 1130 (9th Cir. 2000).  Claim V

11 is **DISMISSED WITHOUT LEAVE TO AMEND**.  *See* Section III (C), *infra.*

## B.  Claim III: Business and Professions Code Section 17200

13          Defendant argues that the remaining portion of Claim III should be dismissed because

14 plaintiffs are neither competitors of defendant nor consumers, and therefore have not pled a claim

15 under Business and Professions Code section 17200.  The UCL prohibits "any unlawful, unfair, or

16 fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  "As the California courts

17 have explained, the unfair competition statute is not limited to 'conduct that is unfair to

18 competitors.'"  *In re Pomona Valley Med. Grp., Inc.*, 476 F.3d 665, 675 (9th Cir. 2007) (citing

19 *People ex rel. Renne v. Servantes,* 86 Cal. App. 4th 1081 (2001)).  "Indeed, in defining unfair

20 competition, § 17200 refers to only business acts and practices, not competitive business acts or

21 practices, and the term "embrac[es] *anything* that can properly be called a business practice."  *Id.*

22 (citation omitted) (emphasis in original).  Where an "unlawful" business practice is charged, actual

23 injury to the consuming public or even to business competitors is not a required element of proof of

24 a violation of Section 17200.  *People ex rel. Van de Kamp v. Cappuccio, Inc.*, 204 Cal. App. 3d

25 750, 760 (1988).  Thus, defendant's argument that Claim III fails because plaintiffs are not

26 competitors of defendant or consumers is unavailing.

27          The Court next considers whether the FAC sufficiently pleads a claim under Section 17200.

28 A plaintiff may allege either an unlawful, an unfair, or a fraudulent act to establish liability under

the UCL.  *See Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

Here, the FAC appears to allege all three forms of UCL violations, alleging that defendants have

engaged in "unlawful, unfair and/or fraudulent business practice . . . ."  (FAC ¶ 63.)  The Court

examines each prong in turn.

### 1.  Unlawful Prong

To state a claim under the unlawful prong of the UCL, plaintiff may allege the commission

of any act "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory,

regulatory, or court-made."  *Saunders v. Sup. Ct.*, 27 Cal. App. 4th 832, 838–39 (1994).  The

unlawful prong of Section 17200 "borrows violations of other laws and treats them as unlawful

practices that the unfair competition law makes independently actionable."  *Cal. Consumer Health

Care Council v. Kaiser Found. Health Plan, Inc.*, 142 Cal. App. 4th 21, 47 (2006) (internal

quotation marks and citations omitted).  Here, plaintiffs incorporate their breach of contract

allegations in this separate UCL claim.  (FAC ¶ 59.)  However, "a common law violation such as

breach of contract is insufficient" to state a Section 17200 claim under the unlawful prong.  *Shroyer

v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) (citation omitted).

Thus, as the FAC does not allege the violation of any other predicate law, their claim under the

unlawful prong of Section 17200 fails.

### 2.  Unfair Prong

With respect to the unfair prong, an act or practice is unfair if the practice "offends an

established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or

substantially injurious to consumers."  *See Lueras v. BAC Home Loans Servicing, LP*, 221 Cal.

App. 4th 49, 81 (2013).  Pending resolution of this issue in the California Supreme Court, our court

of appeals has approved the use of either a balancing test or a tethering test when it comes to

defining unfair conduct.  *See Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 735–36 (9th Cir.

2007).  The Court applies the tethering test, which states that conduct is unfair under Section 17200

when it offends an established public policy that is "tethered to specific constitutional, statutory, or

regulatory provisions."  *Bardin v. Daimler Chrysler Corp.*, 136 Cal. App. 4th 1255, 1261 (2006).

The balancing test assesses the harm to the consumer against the utility of defendant's practice.  *See*

United States District Court
Northern District of California

*South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886 (1999). The unfairness prong must be tethered to some legislative policy. *See Kaar v. Wells Fargo Bank, N.A.*, No. C 16-01290 WHA, 2016 WL 3068396, at *2–3 (N.D. Cal. June 1, 2016).

Here, the FAC alleges that defendant violated Section 17200 because it: "(i) misrepresented the profitability of the San Ramon and Dublin stations as a result of the various breaches alleged above; (ii) insisted that plaintiffs continue to operate the San Ramon station at a loss; (iii) retaliated against the Dublin station for the closure of the San Ramon station; (iv) maintained a lien on plaintiffs' real property despite the end of its business relationships with defendant; and (v) made representations to keep plaintiffs ignorant of its true intentions to delay plaintiffs from pursuing its meritorious claims so that defendant could foreclose on plaintiffs' properties." (FAC ¶ 61.) These allegations generally relate to plaintiffs' breach of contract claim. Moreover, they do not articulate how the alleged wrongdoing is conduct tethered to any legislative policy. Therefore, the FAC fails to state a claim under the unfair prong of Section 17200. If amending their pleading to proceed under the unfair prong, plaintiffs should make clear that defendant's conduct offended an established public policy and tie that policy to a particular legislative provision.

### 3.   Fraudulent Prong

With respect to the fraudulent prong, the UCL requires "only a showing that members of the public are likely to be deceived" by the allegedly fraudulent practice. *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 81 (2013). Additionally, to sustain a claim under the fraudulent prong of the UCL in federal court, plaintiffs must plead "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). Thus, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted). "The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 157 (1991).

1    Here, the FAC fails to allege that members of the public are likely to be deceived by

2 defendant's conduct.  In fact, the complaint does not address the argument at all.  Thus, plaintiffs'

3 FAC fails to plead a claim under Section 17200 under a theory of fraud.

4    In sum, the FAC does not plead facts to support a claim under any of the three prongs of

5 Section 17200.  Therefore, Claim III is **DISMISSED WITH LEAVE TO AMEND,** as amendment would

6 not necessarily be futile.  *See Lopez*, 203 F.3d at 1130 (9th Cir. 2000).  If plaintiffs wish to proceed

7 under a theory of fraud under Section 17200, they must plead the details with sufficient

8 particularity.  *See Vess*, 317 F.3d at 1103.  Further, plaintiffs shall identify the prong under which

9 they are proceeding.

10    **C.  Claim V: Breach of Fiduciary Duty**

11    Defendant argues that Claim V fails because plaintiffs have failed to plead the existence of a

12 fiduciary relationship with BP.

13    Plaintiffs concede that there is no fiduciary relationship imposed by law between a

14 franchisor and a franchisee.  (Opp. at 21.)  "The relation between a franchisor and a franchisee is

15 not that of a fiduciary to a beneficiary."  *Boat & Motor Mart v. Sea Ray Boats, Inc.*, 825 F.2d 1285,

16 1292 (9th Cir. 1987).  However, they argue that a fiduciary relationship existed as a result of the

17 parties' confidential relationship and contractual agreement with each other.  They cite authority for

18 the proposition that a fiduciary duty may be undertaken by agreement when one person enters into

19 a confidential relationship with another.  *See Ford v. Shearson Lehman Am. Express, Inc.*, 180 Cal.

20 App. 3d 1011, 1020 (1986) (holding that plaintiff was not compelled to arbitrate action for breach

21 of fiduciary duty against his securities broker and investment advisor, former psychotherapist, and

22 former bookkeeper and business manager; "A confidential relationship 'may be said to exist

23 whenever trust and confidence is reposed by one person in the integrity and fidelity of another.'

24 [Citations.]  And where the person in whom such confidence is reposed, by such confidence obtains

25 any control over the affairs of the other, a trust or fiduciary relationship is created."  (citations

26 omitted)); *Main v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 67 Cal. App. 3d 19 (1977),

27 *overruled by Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394 (1996) (action against a stock

28 brokerage firm by a client for losses and damages due to discretionary sales and purchases of stock

United States District Court
Northern District of California

1  made pursuant to a lending agreement); *GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs.,*

2  *Inc.*, 83 Cal. App. 4th 409, 420–21, *as modified* (Sept. 14, 2000), *as modified on denial of reh'g*

3  (Sept. 26, 2000) *disapproved of by Reeves v. Hanlon*, 33 Cal. 4th 1140, 95 P.3d 513 (2004)

4  (holding that "an officer who participates in management of the corporation, exercising some

5  discretionary authority, is a fiduciary of the corporation as a matter of law.")

6        Plaintiffs' authorities are inapposite because they do not involve franchise relationships.

7  The confidential relationships examined in those cases (*i.e.*, with investment advisors,

8  psychotherapists, stock brokers, and corporate officers) are far different from the relationship at

9  issue here.  Plaintiffs argue that a fiduciary relationship existed because they entered into a

10 relationship based on "confidence and trust" with BP and BP had significant control over plaintiffs'

11 affairs.  For example, they allege that BP had the sole discretion to set pricing and delivery of fuel,

12 selected vendors for goods and services, and were obligated to act on plaintiff's behalf.  However,

13 these facts alone do not give rise to a fiduciary relationship.  *See, e.g., Sea Ray Boats, Inc.*, 825

14 F.2d at 1292 (franchisor owed no fiduciary duty to franchisee despite the fact that franchisor gave

15 franchisee "detailed instructions on what [franchisee's] salesmen should do" and wear, required

16 franchisee to purchase its merchandise, and limited the rates it would reimburse franchisee for

17 warranty work to Franchisee's economic detriment).

18       As the plaintiffs and Court have located no authority that a fiduciary duty exists in a

19 franchise relationship under California law, and because plaintiffs do not plead allegations in the

20 FAC suggesting that a fiduciary relationship would otherwise exist, granting plaintiffs leave to

21 amend their claim would be futile.  Thus, Claim V is **DISMISSED WITHOUT LEAVE TO AMEND.**

22     *//*

23     *//*

24     *//*

25     *//*

26     *//*

27     *//*

28     *//*

**IV.    CONCLUSION**

For the foregoing reasons, BP's motion to dismiss is **GRANTED** as follows: Claims I through IV are **DISMISSED WITH LEAVE TO AMEND**.  Claim V is **DISMISSED WITHOUT LEAVE TO AMEND**. Plaintiffs shall file an amended complaint by no later than November 17, 2016.  Defendant shall file a responsive pleading within fourteen (14) days of the filing of the amended complaint.   The hearing on November 15, 2016, is **VACATED**.

This terminates Docket No. 19.

**IT IS SO ORDERED**.

Date: **November 3, 2016**

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**