# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **POWER QUALITY & ELECTRICAL SYSTEMS, INC., ET AL.,**<br><br>Plaintiffs,<br><br>vs.<br><br>**BP WEST COAST PRODUCTS LLC,**<br><br>Defendant. | CASE NO. 16-cv-04791-YGR<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY ON COUNTERCLAIMS III, V, VII, AND IX** |

On December 12, 2017, this Court granted defendant BP West Coast Products LLC's ("BP") motion for summary judgment as to plaintiffs' affirmative claims on the ground that such claims were untimely and denied defendant's motion for summary judgment as to counterclaims I, II, IV, VI, VIII, and X, on the same ground. (Dkt. No. 71, Order Granting Partial Summary Judgment.) As the parties' briefing was sparse with regard to defendant's motion for summary judgment on the remaining counterclaims, namely numbered III ("Dublin Franchise Agreements"), V ("Dublin Guarantee Agreement"), VII ("San Ramon Franchise Agreements"), and IX ("San Ramon Guarantee Agreement"), the Court ordered addition briefing which the parties have provided. (*See id.* at 14:20-24.) Now before the Court is defendant's motion for summary judgment as to these four remaining counterclaims.

Having carefully considered the pleadings and motions, the hearing held on December 5, 2017, and for the reasons set forth below, the Court **GRANTS** defendant's motion for summary judgment as to liability on its counterclaims for breach of the (i) Dublin Franchise Agreements, (ii) Dublin Guarantee Agreement, (iii) San Ramon Franchise Agreements, and (iv) San Ramon Guarantee Agreement.

**I.     RELEVANT FACTUAL BACKGROUND**

The facts of this case were previously set forth in this Court's December 12, 2017, Order

Granting Partial Summary Judgment, and need not be repeated at length here. Relevant to the instant motion, the Dublin and San Ramon Guarantee Agreements (collectively the "Guarantee Agreements") state that:

> The undersigned irrevocably, ***fully and unconditionally guarantees to BP the full and prompt performance and payment*** when due, whether by acceleration or otherwise, of ***any and all of the obligations of Debtor owed to BP***, including but not limited to, ***all obligations, responsibilities, financial requirements, indebtedness, liabilities, debit balances***, letter of credit or purchase guaranty reimbursement obligations, covenants, duties and all other obligations of whatever kind . . . ***whether fixed or contingent, known or unknown, liquidated or unliquidated, preset or future, no matter how or when arising*** under the Franchise Agreement[s] or any other present or future related agreement . . . (collectively, the "Obligations").

(Dkt. No. 54, Ex. AH ¶ 1; Ex. AI ¶ 1 (emphasis supplied).) In the event of termination by either party, the Guarantee Agreements afford BP the right to "[d]eclare all or any part of the Obligations to be forthwith due and payable, without presentation, demand, or notice of any kind, all of which are hereby expressly waived by [plaintiffs]." (*Id.*, Ex. AH ¶¶ 6.5, 7.1; Ex. AI ¶¶ 6.5, 7.1.) The Dublin and San Ramon Franchise Agreements (the "Franchise Agreements") similarly state that upon termination by either party plaintiffs "shall" pay "any and all sums" owed to BP. (*Id.*, Ex. F ¶ 19(e); Ex. G ¶ 19(e).)

The record reflects that defendant sent plaintiffs two notices of termination and demands for payment of outstanding amounts due via hand delivery and certified mail on May 17, 2012, and July 23, 2012, respectively. (*Id.*, Exs. C, D.) The May 17th letter, addressing the San Ramon Franchise and Guarantee Agreements demanded payment:

> to BP [of] all sums due and owing to BP as a result of Franchisee's operation of the Facility, which includes, but is not limited to: estimated liquidated damages, pursuant to Section 19.01(d) of the am/pm Agreement, in the sum of **$226,000.00**; an outstanding DOFO Loan balance in the sum of **$475,000,00.00**; the "deemed repaid" loan balance for the Retalix POS/BOS System, in the amount of **$9,000.00**; the Financing amount owed for purchase price of the Retalix POS/BOS System in the amount of **$33,555.37**; and all other sums due and owing resulting from the early termination of the Existing Franchise Agreements.

(*Id.*; Ex. C at PQES 000004 (emphasis in original).) The July 23rd letter, addressing the Dublin Franchise and Guarantee Agreements also demanded payment. Thus:

<blockquote>
Franchisee must also pay to BP all sums due and owing BP as a result of Franchisee's operation of the Facility, which includes, but is not limited to: estimated liquidated damages, pursuant to Section 19.01(d) of the am/pm Agreement, in the sum of **$453,007.33**; an outstanding DOFO Loan balance in the sum of **$471,098.27**; the "deemed repaid" loan balance for the Retalix POS/BOS System, in the amount of **$15,000.00**; the Financing amount owed for purchase price of the Retalix POS/BOS System in the amount of **$22,063.55**; [and] an outstanding balance of **$62.843.09** owed for past deliveries of Motor Fuel to the Facility
</blockquote>

(*Id.*; Ex. D at PQES 000006 (emphasis in original).)

BP proffers expert testimony that plaintiffs owe BP $1,060,986 pursuant to the Dublin Franchise and Guarantee Agreements and $857,673 pursuant to the San Ramon Franchise and Guarantee Agreements. (*Id.*, Ex. AJ, Expert Report of Joel Lesch at 5-11, Attachments 4-7; Ex. AK.) However, BP has failed to provide the underlying business records to support the opinions proffered or trace how those amounts stem from the required demands quoted above. Plaintiffs concede that they have not paid any amounts demanded. (Dkt. No. 58-1, Plaintiffs Response to Separate Statement of Undisputed Material Fact No. 101.)

## II.  SUMMARY JUDGMENT LEGAL FRAMEWORK

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact as to the basis for the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*.

Where the moving party has the burden of proof at trial, it "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. *Anderson*, 477 U.S. at 250; *Soremekun*, 509 F.3d at 984; *see* Fed. R. Civ. P. 56(c), (e). The opposing party's evidence must be more than "merely colorable" and must be "significantly probative." *Anderson*, 477 U.S. at 249–50. Further, the opposing party may not rest upon mere

allegations or denials of the adverse party's evidence, but instead must produce admissible evidence showing a genuine dispute of material fact exists. *See Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Nevertheless, when deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011). A district court may only base a ruling on a motion for summary judgment upon facts that would be admissible in evidence at trial. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010); Fed. R. Civ. P. 56(c).

## III. DISCUSSION

Plaintiffs do not dispute that they signed the Guarantee Agreements which state that plaintiffs "irrevocably, fully and unconditionally guarantee[] to BP the full and prompt performance and payment when due . . . of any and all of the obligations [plaintiffs] owned to BP . . . no matter how or when arising under the Franchise Agreement[s] or any other present or future related agreement . . . ." (Dkt. No. 54, Ex. AH ¶ 1; Ex. AI ¶ 1 (emphasis supplied).) The record reflects that payment became due when BP sent plaintiffs two notices of termination and demands for payment on May 17, 2012, and July 23, 2012. (*Id.*, Ex. C; Ex. D; Ex. AH ¶¶ 6.5, 7.1; Ex. AH ¶¶ 6.5, 7.1.) Plaintiffs concede that they have not paid defendant the amounts demanded by BP in the termination notices. (Plaintiffs Response to Separate Statement of Undisputed Material Fact No. 101.)

Nonetheless, plaintiffs raise three primarily arguments[1] in opposition to defendant's

---

[1] Plaintiffs further argue that defendant fails to offer competent evidence in support of its alleged damages. Specifically, plaintiffs characterize the expert report of defendant's damages expert, namely Joel E. Lesch, as inadmissible hearsay. The Court concurs that defendant has failed to provide evidentiary support for the opinions offered. However, plaintiffs proffer no authority which supports plaintiffs' argument that Lesch's failure to submit excerpts from his deposition transcript renders Lesch's declaration hearsay.

4

motion, namely that (i) defendant seeks damages which are inconsistent with defendant's counterclaims for breach of the Dublin and San Ramon Franchise Agreements; (ii) defendant's counterclaim for breach of the Dublin Franchise Agreements fails because the Dublin Franchise Agreements were terminated in 2009; and (iii) defendant's unclean hands precludes summary judgment. The Court addresses each.

### A. Damages Sought by Defendant

Plaintiffs contend that defendant seeks categories of damages which are inconsistent with defendant's counterclaims for breach of the Dublin and San Ramon Franchise Agreements. Specifically, plaintiffs argue that defendant's counterclaims only seek recovery for plaintiffs' alleged breaches of the Dublin and San Ramon Franchise Agreements but that defendant now seeks additional (i) "liquidated damages" as well as damages for (ii) breach of the "Retalix Obligation" and (iii) "unpaid fuel."

Plaintiffs do not persuade, as the categories of damages which defendant now seeks arise under the plain language of the Franchise and Guarantee Agreements. (Dkt. No. 54, Ex. F ¶ 19.01(d); Ex. G ¶ 19.01(d); Ex. AH ¶ 1; Ex. AI ¶ 1.) First, with regard to liquidated damages, the Guarantee Agreements require plaintiffs' payment of "all obligations . . . *liquidated or unliquidated* . . . arising under the Franchise Agreement[s] . . . ." (Ex. AH ¶ 1; Ex. AI ¶ 1 (emphasis supplied).) The Franchise Agreements obligate plaintiffs to "pay to BP[] at the time of termination, *as liquidated damages*" the greater of "total minimum royalty fee which would have been payable under the [Franchise] Agreement[s]" or "actual average royalty fee paid" from the date of termination through the end of the term provided in Franchise Agreements. (*Id.,* Ex., ¶ 19.01(e); Ex. F. ¶ 1901(e) (emphasis supplied).)

Second, damages for breach of the Retalix Obligation arise from the express terms of the Franchise Agreements which require plaintiffs to purchase from BP a "computerized point of sale cash collection system (including all related hardware and software)" specified by BP, namely the Retalix system, "at a cost of $35,000 to $40,000." (*Id*, Ex. F ¶ 15.04; Ex. G ¶ 15.04.) Third, with regard to unpaid fuel, the Franchise Agreements state that upon termination plaintiffs shall pay to BP "all sums then due and owing." (*Id*. Ex. E, ¶ 19.01(e); Ex. F. ¶ 1901(e).) Plaintiffs offer no

5

evidence that their obligation to pay BP "all sums then due and owing" excludes fuel.[2]

### B. Alleged Termination of the Dublin Agreements

Plaintiffs next argue that defendant's counterclaim for breach of the Dublin Franchise Agreements fails because the parties terminated the agreements in 2009. (Dkt. No. 72 at 6.) However, the Court previously rejected this argument in its Order Granting Partial Summary Judgment on the three grounds, namely that (i) plaintiffs' complaint does not allege that the parties terminated the Dublin Franchise Agreements; (ii) plaintiffs' first cause of action based partly on BP's alleged breach of the Dublin Franchise Agreements was logically inconsistent with plaintiffs' new argument that the agreements were terminated; and (iii) Mr. Singh testified that he still considered himself bound by the Dublin Franchise Agreements after receiving a Notice of Termination regarding the Dublin Franchise Agreements and meeting with defendant's representative, namely Mr. Sell.[3]

### C. Unclear Hands

"The doctrine of unclean hands bars a plaintiff from relief when the plaintiff has engaged in misconduct relating directly to the transaction concerning which suit is brought." *California Bank & Tr. v. DelPonti*, 232 Cal.App.4th 162, 167 (2014); *Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal. App. 4th 970, 978 (1999); *see also Ellenburg v. Brockway, Inc.*, 763 F.2d 1091 (9th Cir. 1985). The doctrine of unclean hands is only applicable if a party intentionally acts in bad faith or with "bad intent." *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc*., 890 F.2d 165, 173 (9th Cir. 1989) (evidence of negligence insufficient to invoke unclean hands defense because

---

[2] Plaintiffs also argue that defendant's motion "requests damages far in excess of the amount claimed due in its pleadings." (Dkt. No. 72 at 5.) A pleading need only give notice. (*See* Dkt. Nos. 40 ¶¶ 46, 85.) BP can bring current its claim for damages. However, the basis for the claim must be founded on appropriate business records, not merely an expert's report.

[3] In any event, plaintiffs' argument fails for the additional reason that even if the parties terminated the Dublin Franchise Agreements in 2009 and subsequently signed new agreements in 2009, plaintiffs would still be obligated to pay sums due to BP because the Dublin Guarantee Agreement requires plaintiffs to pay sums due under "any other present or future related agreement."

6

"[b]ad intent is the essence of the defense of unclean hands."); *see also United States v. Able Time, Inc.*, 2011 WL 2669222, at *7–8 (C.D. Cal. 2011) (party must have acted with "bad intent" for unclean hands to be applicable).

Here, plaintiffs contend that defendant "knowingly and intentionally made representations to Plaintiffs that it would walk away from the contracts."[4] (Dkt. No. 72 at 7.) Specifically, plaintiffs contend that BP "lured [plaintiffs] into not pursuing its own contractual claims before they expired under the statute of limitations." (*Id*.)

Plaintiffs do not persuade. First, plaintiffs offer no evidence which indicates "bad intent' on the part of BP. Plaintiffs' assertion that Eric Sell purposely attempted to "lure" plaintiffs into not pursuing contractual claims against BP lacks factual support and is thus insufficient to establish a triable issue. Second, as the Court stated on the record on December 5, 2017, plaintiffs' theory that BP intended to abandon its claims for $1.9 million in unpaid expenses defies logic in light of the significant leverage which BP held over plaintiffs at that time. (Dkt. No. 70.)

Accordingly, the Court finds that plaintiffs have failed to produce admissible evidence showing the existence of a genuine dispute of material fact as to liability. *See Nissan Fire,* 210 F.3d at 1102–03.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendant's motion for summary judgment

---

[4] As discussed extensively in this Court's Order Granting Partial Summary Judgment, in late May 2012, plaintiffs met with BP franchise business consultant Eric Sell to discuss the amicable closure of the San Ramon station. (Dkt. No. 27, Second Amended Complaint ("SAC" ¶ 33.) Plaintiffs allege that they indicated that they were "prepared to contact their counsel and commence legal action against BP for misrepresentations as to the San Ramon station and financial misconduct as to the Dublin station." (*Id.*) Sell provided plaintiffs with the contact information of an individual who was building his own station, and plaintiffs then arranged to sell him their equipment. (*Id.*) Plaintiffs further aver that plaintiffs and BP "agreed and understood that upon the sale of the BP equipment . . . the relationship between plaintiffs and BP, with respect to the San Ramon station, was terminated and that neither were indebted to each other." (*Id.* ¶ 33.) Plaintiffs allegedly believed that this agreement (the alleged "Walkaway Agreement") "superseded the alleged claims outlined in the San Ramon Termination Letter." (*Id.*) Plaintiffs claim Sell made assurances that the Franchise and Guarantee Agreements were concluded with no further obligation and that plaintiffs agreed to forego commencing litigation based upon those assurances. (*Id.* ¶¶ 3, 33, 39, 40.)

7

for liability only as to counterclaims III, V, VII, and IX for breach of the (i) Dublin Franchise Agreements, (ii) Dublin Guarantee Agreement, (iii) San Ramon Franchise Agreements, and (iv) San Ramon Guarantee Agreement, respectively. As BP has failed to provide a sufficient evidentiary basis for the actual amount of damages claimed, the parties are ordered to meet and confer on the most efficient way to present this material for resolution and provide the Court with a joint statement by **Monday, January 29, 2018**.

**IT IS SO ORDERED.**

Dated: January 23, 2018

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**